**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CHERYL SINGLETON, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:15-CR-0443-SCJ-RDC-1 |
| UNITED STATES, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:19-CV-4624-SCJ-RDC |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct her

federal sentence entered under the above criminal docket number.  The matter is

before the Court on the § 2255 motion, as supplemented [Docs. 118, 123],

Respondent's response [Doc. 128], and Movant's reply [Doc. 130].  For the reasons

discussed below, Movant's motion to vacate and a certificate of appealability are due

to be denied.

## I.  **Background**

The grand jury for the Northern District of Georgia indicted Movant on thirty-

five counts, including (1-12, 33-35) wire fraud, (13-20) aggravated identify theft, and

(21-32) false claims against the Internal Revenue Service.  [Doc. 41 at 1-9].[1]

Retained counsel, Steven Paul Berne and Marcia G. Shein, represented Movant.

[Docket entry dated 1/26/2016; Doc. 30].  On August 2, 2016, Movant pleaded guilty

to count one, wire fraud.  [Doc. 48-1; Doc. 97].  The Court imposed a 150-month

term of imprisonment.  [Doc. 75].

Movant directly appealed.  [Doc. 79].  The Court allowed retained counsel to

withdraw and appointed new counsel for appeal, Amy Levin Weil.  [Docs. 77-79,

93].  The Eleventh Circuit Court of Appeals subsequently affirmed the judgment

against Movant.  United States v. Singleton, 728 F. App'x. 947, 948 (11th Cir. 2018),

cert. denied, _ U.S. _, 139 S. Ct. 494 (2018).

In her motion to vacate, Movant asserts the following five grounds for relief:

ineffective assistance of counsel (1) for failing to communicate to Movant the

existence of a plea offer before it lapsed; (2) for failing to file a notice of appeal as

directed by Movant; (3) for coercing Movant to sign the Joint Stipulations as to

Presentence Investigation Report and Sentencing (Joint Stipulations); (4) for failing

to object to the deprivation of unfettered allocution for Movant; and (5) for failing to

---

[1] The Court cites to the electronic pagination for each document.

object to the order of restitution, which the district court imposed in error.  [Doc. 118 at 4-6, Doc. 123 at 1, 7].

## II.   Standard

### A.   28 U.S.C. § 2255

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  The § 2255 movant bears the burden to establish his or her right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015), which is limited.

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 164, 166 (1982).  Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965,

3

966 (11th Cir. 1988)) (internal quotation marks omitted).  A constitutional claim of ineffective assistance of counsel, which generally cannot be fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  Massaro v. United States, 538 U.S. 500, 505-09 (2003).

"The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting § 2255(b)).  That is the case here, as shown in the discussion further below.

**B.  Ineffective Assistance of Counsel**

In her grounds for relief, Movant asserts ineffective assistance of counsel, to which Strickland v. Washington, 466 U.S. 668 (1984), applies.  A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  Id. at 687.  To show constitutionally ineffective assistance of counsel, a movant must establish (1) that counsel's representation was deficient and (2) that counsel's deficient representation prejudiced the movant.  Id. at 690-92.  The Court may resolve

4

an ineffective assistance claim based on either of the above prongs.  Pooler v. Sec'y,

Fla. Dep't of Corr., 702 F.3d 1252, 1269 (11th Cir. 2012).

Under the first prong, a movant must show that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."  Strickland, 466 U.S. at 690.  "Because we

presume counsel was competent, [the movant] 'must establish that no competent

counsel would have taken the action that his counsel did take.'"  Dell v. United States,

710 F.3d 1267, 1281 (11th Cir. 2013) (quoting Chandler v. United States, 218 F.3d

1305, 1315 (11th Cir. 2000) (en banc)).  Under the second prong, a movant "must

show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694.  The habeas petitioner or § 2255 movant has the burden

of affirmatively proving prejudice, and a "conceivable effect" on the proceedings

does not show prejudice.  Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008)

(quoting Strickland, 466 U.S. at 693); see also Collins v. Sec'y, Florida Dep't of

Corr., 745 F. App'x 849, 859 (11th Cir. 2018) ("Collins' ineffective counsel claim

fails because he has not proffered what statements or information, if any, Vilaire

would have introduced had she testified at trial."); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

## III.   Discussion

### A.   Ineffective Assistance of Counsel on Communicating Plea Offer

On June 30, 2016, Kimberly Todd, from Ms. Shein's office, sent an email to the prosecutor which stated (1) that the defense had been informed that the government would not approve application of U.S.S.G. § 2T1.1 (referred to by the parties as 2T),[2] (2) that the government had been unreasonable in allowing plea discussions to proceed before it ever obtained approval for the application of the 2T guidelines, and (3) that Movant had been ready to take the plea but that counsel could not say that Movant would accept the plea as her exposure would increase under

---

[2] U.S.S.G. § 2T1.1 provides the base offense level for fraudulent or false tax returns, which Movant argued would yield, after adjustments, a final offense level of twenty-seven and a guidelines range of seventy to eighty-seven months. [Doc. 71 at 5].

application of U.S.S.G. § 2B1.1 (referred to by the parties as 2B).[3]  [Doc. 118 at 40].

The prosecutor replied that they had agreed weeks ago that –

> if your client would sign off quickly we would take the deal to our
> supervisors to see if we could get approval.  You may also recall that, at
> the time, none of us saw your client agreeing to any deal, which is why
> I asked you to get sign off from your client before I pursued anything in
> the [United States Attorneys Office (USAO)].  I prefaced that statement
> by telling you and Steven Berne that our office has not stipulated to T2
> in the past.  After that call, not only did we not reach a plea quickly, you
> indicated that the deal was unacceptable by, among other things,
> proposing numerous counteroffers.

[Id.].   The prosecutor further replied, "[w]e have returned with what we have

approval for and it is a fair compromise.  The proposed terms of the plea agreement

permit you to argue that the T2 guideline applies.  It also provides your client the

third point for acceptance . . . ."  [Id.].

On August 2, 2016, Movant and the government entered into a plea agreement,

which the Court accepted.  [Doc. 48-1; Doc. 97 at 29].  Therein, Movant pleaded

guilty to count one, wire fraud; the government agreed to dismiss all the remaining

counts and bring no additional charges related to the charge to which Movant was

---

[3] U.S.S.G. § 2B1.1 provides the base offense level for wire fraud, which, with
adjustments, resulted in a total offense level of thirty-six and a guidelines range of
188 to 235 months.  [Doc. 98 at 3-4].

pleading guilty, and that the government would recommend a guidelines adjustment based on acceptance of responsibility (subject to exceptions).  [Doc. 48-1 at 1, 4-5].

Movant now argues that trial counsel was ineffective because (1) weeks before June 30, 2016, trial counsel received a plea offer from the government, which, if quickly signed by Movant, would have locked Movant into a plea agreement that stipulated to application of § 2T1.1; (2) counsel did not inform Movant of the offer in a timely manner and allowed it to lapse; and (3) Movant had to settle for a less favorable plea offer, which resulted in a higher sentencing range.  [Doc. 118 at 25-26].  Respondent argues that ground one fails because a more favorable plea offer was never available and because Movant's exhibits do not show the existence of a more favorable plea offer or any actionable plea agreement that stipulated to application of § 2T1.1.  [Doc. 128 at 13-16].  Movant replies that the emails (discussed above) show that there was a § 2T1.1 deal and that the deal was pulled off the table.  [Doc. 130 at 2-5].

"Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (citing Strickland, 466 U.S. at 688).  Generally, defense counsel has a "duty to communicate formal offers from

the prosecution to accept a plea" and renders ineffective assistance if the offer expires without his communicating it to the defendant.   In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (quoting Missouri v. Frye, 566 U.S. 134, 145 (2012)).   However, "defense counsel's duty to communicate plea negotiations extends only to formal offers from the prosecution[,]" and defense counsel has no duty to communicate a "contemplated" offer.   Turbi v. Sec'y, Dep't of Corr., 800 F. App'x 773, 775-76 (11th Cir. 2020) (citing Frye, 566 U.S. at 145).

> [I]n order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented  to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)); Williams v. Crosby, No. 8:02-CV-965-T-30MAP, 2007 WL 1724944, at *14 (M.D. Fla. June 13, 2007) (stating that a defendant "must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it").

9

Here, Movant fails to show the existence of a formal plea offer that stipulated to application of § 2T1.1. The email exhibits provided by Movant show only (1) that counsel and the government discussed the possibility of a § 2T1.1 plea offer and (2) that, although the government did not make a formal offer at the time, it was willing, if counsel promptly obtained a "sign off" from Movant, to pursue approval of a § 2T1.1 plea from the USAO. [Doc. 118 at 40]. Thus, Movant has not met her burden of establishing deficient performance for failing to communicate to Movant an existing, formal plea offer. See Davidson v. United States, No. 4:11CV1370-CDP, 2013 WL 1946206, at *4 (E.D. Mo. May 9, 2013) ("In this § 2255 proceeding, the burden is on [the movant] to demonstrate every element entitling him to relief, including the existence of a plea offer."); see also Duronslet v. Cain, No. CV-15-4389, 2015 WL 9948220, at *8 (E.D. La. Nov. 25, 2015) (holding that the petitioner failed to meet burden of showing that alleged uncommunicated plea offer ever existed – "there is no affidavit from the prosecutor or defense counsel establishing the existence of such an offer"), report and recommendation adopted, No. CV-15-4389, 2016 WL 366610 (E.D. La. Jan. 29, 2016). Further, Movant fails to show prejudice. Had Movant promptly signed off on the tentative offer, there is no indication that it

would have been approved by the USAO and every indication that it would not have been approved.  [Id.].  Ground one fails.

### B.    Ineffective Assistance of Counsel on Filing Notice of Appeal

Movant's ground two claim, that her initial retained counsel were ineffective for failing to fie a notice of appeal, fails.  [Doc. 118 at 26-28].  As indicated earlier, Movant filed a direct appeal and was appointed new counsel for appeal after her retained counsel sought to withdraw.   [Docs. 77-79, 93].   Accordingly, Movant cannot show that she received ineffective assistance of counsel for purposes of appeal.

### C.    Ineffective Assistance of Counsel on Joint Stipulations

The Presentence Investigation Report (PSR), using U.S.S.G.§ 2B1.1 as the relevant guidelines section, determined that Movant had a total offense level of thirty-seven and a guidelines range of 210 to 240 months of imprisonment.  [Doc. 116 at 71-77, 84].[4]  The total offense level included a twenty-level enhancement based on a

--------

[4] The PSR reserved the government's objection on obstruction of justice and did not include a third point for acceptance of responsibility.  [Doc. 116 at 76-77]. After Movant received the additional point for acceptance of responsibility, her total offense level was thirty-six, with a guidelines range of 188 to 235 months.  [Doc. 98 at 3].

loss amount of more than $9,500,000 but less than $25,000,000 (a loss of $20,815,461.55).[5]  [Id. at 72].

> [T]he government objected to the loss amount and the failure to apply an obstruction of justice enhancement, and withdrew its recommendation that [Movant] receive a third point for acceptance of responsibility because [Movant] violated her plea agreement by selling assets without the government's approval.  For her part, . . . [Movant] objected to the use of U.S.S.G. § 2B1.1(a) as the applicable guideline (rather than § 2T1.1), the loss amount, the enhancement for more than ten victims, the enhancement for sophisticated means, the enhancement for use of five or more means of identification, the enhancement for obstruction of justice, and the failure to award a third point for acceptance of responsibility.

Singleton, 728 F. App'x at 949 n.1.

Subsequently, on January 24, 2017, the parties filed the Joint Stipulations. [Doc. 70].  The government agreed to withdraw all objections to the PSR, not to seek an obstruction enhancement, not to seek to withhold a third point for acceptance of responsibility, and to recommend no greater than 150 months of imprisonment.  [Id. at 1-2].  Movant agreed to withdraw all objections to the PSR, including objections

---

[5] The Court notes that the PSR, ¶¶ 216 and 397, shows a tax loss amount of $20,696,239.20 (based on an average loss of $2,680.86 per return and 7,720 returns); a USAA loss amount of $421,387.35; and a CareCredit loss of $50,008.06.  [Doc. 116 at 44, 72].

to the loss calculation, application of § 2B1.1, and the applicability of specific offense characteristics (including number of victims, possession of five or more means of identification, and sophisticated means). [Id. at 1]. The parties agreed that "[a]t the sentencing hearing, both parties will recommend a term of imprisonment based on the sentencing factors identified in 18 U.S.C. § 3553(a). The parties will not, in any form challenge the calculation of the Defendant's Guideline range as set forth in the PSR." [Id.]. All counsel, and Movant personally, signed the Joint Stipulations. [Id. at 2].

On direct appeal, Movant argued that the Joint Stipulations waiver of objections to the PSR constituted a modification of the plea agreement, that the trial court failed to ensure that the Joint Stipulations were knowing and voluntary, and that her guilty plea, modified by the Joint Stipulations, was not knowing or voluntary. Singleton, 728 F. App'x at 948-49 ("[Movant] argues . . . she altered a term of the plea agreement which had reserved her right to 'make recommendations' regarding the application of the Sentencing Guidelines."). The Eleventh Circuit Court of Appeals held that "[t]he district court did not err when it accepted the parties' joint stipulation at sentencing without conducting a second Rule 11 plea colloquy" and rejected Movant's argument and challenge to her conviction. Id. at 950.

13

Movant argues in her third ground for collateral relief (1) that trial counsel performed ineffectively by coercing her to sign the Joint Stipulations and by misadvising her on the consequences of the Joint Stipulations and (2) that the trial court erred in failing to determine whether the Joint Stipulations were knowing and voluntary.  [Doc. 118 at 28-34].  As to counsel's alleged misadvice, Movant states that counsel told here "that she would receive a 70 month sentence even though she was signing a [Joint Stipulations] for a 150 month sentence, counsel said that he would argue for a 70 month sentence[.]"  [Id. at 29].  Movant also states that counsel advised her to "trade off" a § 3C1.1 obstruction enhancement and that she never received the two points off for obstruction of justice.  [Id.].  Movant otherwise fails to describe with any specificity the content of counsel's alleged misadvice.  [Id. at 28-34].[6]  Movant contends that she would have had "a high probability of receiving a 150 month sentence without the [Joint Stipulations]."  [Id. at 29].

---

[6] Movant also states that, if she had understood the consequences of the Joint Stipulations, she would have strongly considered proceeding to trial instead of pleading guilty.  [Doc. 118 at 29].  Movant did not raise as a ground for relief a claim that her guilty plea was involuntary, and the Court does not construe Movant's statement as an attempt to do so.  Further, the Eleventh Circuit Court of Appeals rejected the claim that the Joint Stipulations disturbed the validity of the guilty plea.

Respondent argues, *inter alia*, that Movant fails to show prejudice.   [Doc. 128 at 18].   Movant replies (1) that she has evidence which would have shown that the "amounts that were used" to determine her guidelines should have been lower[7] and

_____

[7] In her reply, for the first time, Movant has raised an argument based on particular evidence on loss amount and has attached a copy of an undated letter from Jones Tax Group (JTG) in regard to loss amount.   [Doc. 130 at 6; Doc. 130-1]. Raising this issue for the first time in a reply leaves Respondent with no opportunity to respond, is improper, and need not be considered.   See Barnes v. United States, 12-60011-CR, 2018 WL 2770171, at *12 (S.D. Fla. Mar. 28, 2018) (declining to consider issues raised for the first time in traverse/reply to response in § 2255 proceedings), report and recommendation adopted, CV 16-62416-CIV, 2018 WL 2770125 (S.D. Fla. June 8, 2018).

Further, a review of the JTG letter does not show that counsel was ineffective in withdrawing objections to the loss amount.   The letter states:   (1) that JTG was retained by Movant's counsel to review the income tax returns prepared by Advanced Tax Service (Movant's company) and to assist in a challenge to the government's loss calculation in regard to the number of returns (7,700) and the extrapolated loss for each return ($2,708); (2) that JTG believed that the government had proposed a loss range of 3.5 to 9 million; (3) that JTG reviewed 6,389 tax returns and 5,949 filed tax returns but would have to wait on a report from Santa Barbara Bank to further determine the number of tax returns at issue; (4) that JTG divided the returns into six categories; (5) that five of the categories were considered to be potential-loss categories (including the "Edu Credit Only[,]" "W-2[,]" and "No Documents" categories); (6) that JTG determined the loss amount for only the "No Documents" category, a category with 985 returns, and that there was a $3,009,546 loss for that category (an average of $3,055 loss per return); (7) that, because of time constraints, JTG did not know the loss amounts for the other four potential-loss categories; and (8) that, if JTG assumed a $295,000 loss (at $1,000 for each return) for the "Edu Credit Only" category, a $3,464,000 loss (at $1,000 for each return) for the "W-2"

15

(2) that counsel coerced her by advising her she would be facing a nineteen-year sentence if she did not sign the Joint Stipulations.  [Doc. 130 at 6].[8]

_____

category, and a zero loss for the remaining two categories, the loss amount would be $6,768,546.  [Doc. 130-1 at 1, 4-5].  The letter concluded, "I don't believe that any additional time should be spent on computing an actual loss amount.  The number will likely be within or higher than the range of $3.5M-$9M proposed by the Government."  [Id. at 4].

The undersigned cannot say that no reasonable counsel would have agreed to waive objection to the loss amount when JTG (1) came to no conclusion on the number of returns at issue; (2) showed a per-return loss of $3,055 for one potential-loss category; (3) did not compute the loss for the remaining four potential-loss categories; (4) estimated that the loss would be at least $6,768,546, even if they assigned zero loss to two of the potential-loss categories; and (5) concluded the loss amount would likely be within or higher than the range of $3.5M-$9M, which they thought had been proposed by the government.  Movant does not show that, if counsel had rejected the Joint Stipulations and had produced the JTG letter at sentencing, (1) that there is a reasonable probability that the Court would have found a loss amount of under $9,500,000, lowering Movant's offense level by two points, <u>see</u> U.S.S.G. § 2B1.1(b)(1)(J), or (2) that it, ultimately, would have resulted in a lower sentence, especially in light of the fact that the government likely would have pursued a two level increase based on obstruction and declined to recommend the full three points for acceptance of responsibility, and may have recommended a sentence in excess of 150 months.

[8] In her reply, Movant also states that the government failed to drop the obstruction of justice enhancement as agreed and that she only received a two level reduction for acceptance of responsibility.  [Doc. 130 at 9].  Movant is factually incorrect.  The government did drop the obstruction of justice enhancement, and Movant did receive a three-level reduction for acceptance of responsibility, which resulted in a total offense level of thirty-six and a guideline range of 188 to 235 months.  [<u>See</u> Doc. 98 at 3-4].  This matter is not further addressed.

16

Movant's argument that the trial court erred in failing to determine whether the Joint Stipulations were knowing and voluntary has been decided by the Eleventh Circuit Court of Appeals and is not addressed again here. As to counsel's advice, the Joint Stipulations, signed by Movant, plainly states (1) that the government would not seek an obstruction enhancement or to withhold a third point for acceptance of responsibility and would recommend no greater than 150 months of imprisonment and (2) that Movant agreed to withdraw all objections to the PSR, including objections to the loss calculation, application of § 2B1.1, and the applicability of specific offense characteristics (including number of victims, possession of five or more means of identification, and sophisticated means). [Doc. 70]. Plaintiff's argument shows no advice by counsel that would have confused the plain language of the Joint Stipulations.

Additionally, the Court finds no deficiency in counsel's advice to "trade off" the § 3C1.1 obstruction enhancement, which benefited Movant when the government agreed not to seek that enhancement. The Court finds no deficiency in counsel's advice on Movant's sentencing exposure – that Movant would be facing a nineteen-year term of imprisonment if she proceeded to sentencing without agreeing to the Joint Stipulations. That advice is essentially correct in that Movant was facing a term

17

of imprisonment of up to twenty years and had agreed in her plea agreement that the Court could impose a sentence of up to twenty years.[9]  [Doc. 48-1 at 3].  Counsel's two statements – that Movant *would receive* a seventy month sentence and that counsel *would argue* for a seventy month sentence – indicate (1) that Movant understood that the Joint Stipulation did not guarantee a seventy month sentence but would require counsel to argue for a seventy month sentence and (2) that counsel informed Movant that he believed his argument would succeed.  Generally, counsel is not ineffective when he shares with his client his belief in a sentencing argument, especially when the client otherwise is aware of his or her sentencing exposure.  Porter v. United States, 10-20075-1, 2015 WL 5916008, at *4 (E.D. Mich. Oct. 7, 2015) ("The mere fact that the Court rejected Movant's sentencing arguments does not render his counsel ineffective for believing that those arguments might succeed or for sharing that belief with Movant.").  Further, to the extent that counsel's advice on Movant's sentencing exposure and counsel's statements on a seventy-month sentence were deficient, Movant fails to show prejudice.  Movant fails to show that, but for counsel's advice/statements, there is a reasonable probability that she

---

[9] Movant also faced twenty years even with the Joint Stipulations.

18

(1) would not have signed the Stipulation, (2) would have proceeded to sentencing to litigate the matters previously contested by both parties, and (3) would have received a more favorable term of imprisonment. Movant's argument on loss amount in her reply does not show any argument counsel should have made that would have made a more favorable sentence reasonably probable. See supra n.7. Movant in fact contends that, without the Stipulations, there would still have been a high probability of her receiving a 150-month sentence. Movant has failed to establish that she received ineffective assistance of counsel in regard to the Joint Stipulations.

### D. **Ineffective Assistance of Counsel on Allocution**

Movant argues that counsel was ineffective for failing to object that the Joint Stipulations – waiving all objections to the PSR and the guidelines range – limited Movant's right to unfettered allocution. [Doc. 123 at 1-2].[10] Respondent argues that this ground fails because the Court specifically told Movant, "you have the right to allocute or tell me anything you want to tell me" and because it would have been non-sensical for counsel to object to the Joint Stipulations which Movant had

_____

[10] Movant again argues that the trial court should have determined whether the Joint Stipulations were voluntary [Doc. 123 at 3-6], which argument the Eleventh Circuit Court of Appeals rejected and which is not addressed again here.

approved.  [Doc. 128 at 20-23].  Movant replies that her ability to tell the Court

anything that she wanted was limited by the Joint Stipulations.  [Doc. 130 at 12-13].

Movant fails to show prejudice in that (had counsel objected and had the Court

had sustained the objection) Movant fails to make any proffer of the allocution that

she would have made or show how or why there is a reasonable probability that such

allocution would have resulted in a more favorable sentence.  See Collins, 745 F.

App'x at 859.

### E.      Ineffective Assistance of Counsel on Restitution

Movant argues that counsel was ineffective for failing to object to the order of

restitution, which the district court imposed in error.  [Doc. 123 at 7].  Respondent

argues, among other things, that this ground fails because restitution, even if couched

in terms of ineffective assistance, is not cognizable in § 2255 proceedings.  [Doc. 128

at 24-26].  Movant replies but does not clearly address Respondent's argument.  [Doc.

130 at 13].

An order of restitution cannot be challenged in a § 2255 proceeding.  Mamone

v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) (agreeing that "claims seeking

relief other than release from custody cannot be brought pursuant to § 2255" (citing

United States v. Thiele, 314 F.3d 399, 402 (9th Cir. 2002)).  Further, an ineffective

assistance of counsel claim, premised on a failure to properly challenge restitution, also does not challenge a movant's custody and is not cognizable in § 2255 proceedings.  See id.; see also Arnaiz v. Warden, Fed. Satellite Low, 594 F.3d 1326, 1327-28 (11th Cir. 2010) (finding that Mamone foreclosed use of § 2255 to raise a challenge to restitution, which was erroneous because of counsel's failures); Blaik v. United States, 161 F.3d 1341, 1343 (11th Cir. 1998) (finding that § 2255 was not available for a restitution claim that had been raised via the "constitutional vehicle" of an ineffective assistance of counsel claim).

Movant's final ground fails because the amount of restitution, and counsel's related performance, cannot be challenged in a § 2255 proceeding.

## IV.   <u>Certificate of Appealability (COA)</u>

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." <u>Melton v. Sec'y, Fla.</u> <u>Dep't of Corr.</u>, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant fails to show that she is entitled to collateral relief. If the Court adopts this recommendation and denies a COA, Movant is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2255 Proceedings for the United States District Courts.

## V.   <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion to vacate, set aside, or correct her federal sentence, as supplemented [Docs. 118, 123], and a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 27th day of May, 2020.

_R. Cannon_
REGINA D. CANNON
UNITED STATES MAGISTRATE JUDGE